

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-28-2004

# Dhaliwal v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3491

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Dhaliwal v. Atty Gen USA" (2004). *2004 Decisions.* Paper 322.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/322

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3491

GURDISH SINGH DHALIWAL,
Petitioner

v.

JOHN ASHCROFT,
Attorney General of the United States,
Respondent

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A76-101-690)

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2004

Before: RENDELL, FUENTES and SMITH, Circuit Judges.

(Filed: September 28, 2004)

OPINION OF THE COURT

RENDELL, Circuit Judge.

Gurdish Singh Dhaliwal, a citizen of India, petitions for review of a decision by

the Board of Immigration Appeals ("BIA") denying his application for political asylum,

withholding of removal, and protection under the Convention Against Torture ("CAT"). In so ruling, the BIA affirmed without opinion the findings of the Immigration Judge ("IJ") that Dhaliwal lacked credibility based on a failure to adequately prove his identity and inconsistent statements made in his testimony and his written asylum application. We have jurisdiction under 8 U.S.C. § 1252. For the reasons that follow, we will deny Dhaliwal's petition for review.

I.

Because we are writing for the parties who are familiar with the record and prior proceedings, we will recite only those facts relevant to the issues now before us. Dhaliwal was the sole witness at his asylum hearing, and his testimony at the hearing established the following facts. Dhaliwal is a 49-year-old native of India. He claims to be a Sikh since birth, belonging to a family of Sikhs. His wife and three children remain in India. He claims that he came to the United States on February 23, 1998 to escape persecution in India for his religion and political involvement.

According to Dhaliwal's testimony, he began to support the Akali Dal Mann party, a political organization comprised largely of Sikhs, in 1982. He claimed that he officially joined the party sometime after 1992. He testified that on June 20, 1991, he and a group of about fifty or sixty other persons, many of whom were official members of the party, were arrested for their participation in a political demonstration against the cancellation of an election. Although almost all of those arrested were released within two days,

2

Dhaliwal claimed that he was singled out and jailed for forty-five days because he was collecting funds for the party. He claims that during the period he was in jail, he was beaten once or twice a week by police.

Dhaliwal testified that after his 1991 arrest, he was politically inactive for several years. In June of 1995, he was arrested in his home after police learned that he planned to hold a religious gathering memorializing an event involving the killings of Sikhs. He testified that he was jailed for three weeks, during which time he was insulted, beaten with clubs, hung upside down, and had his hair and beard pulled.

After being released from jail, Dhaliwal was again politically inactive and only attended casual meetings. He testified that he became active again with his involvement in a demonstration on August 15, 1997, where he led members of the party in chanting slogans against the police. Following this demonstration, police came to his home and arrested his father and wife. Dhaliwal evaded the police by hiding with relatives and eventually fled the country and came to the United States.

Dhaliwal testified that he entered the United States with a passport containing an entry visa. The passport presented at the asylum hearing, however, had no visa and none was offered into evidence. The name stated and signed in the passport did not contain the name "Singh," a surname adopted by Sikhs to reject identification of one's caste by one's given family name. Furthermore, the photograph of Dhaliwal in the passport showed him without a turban, the traditional headwear of Sikhs. No other official identity documents

3

were offered.

In his oral decision, the IJ stated two primary bases for his adverse credibility determination: (1) Dhaliwal's failure to establish his identity, and (2) numerous inconsistencies within and between his application for asylum and his testimony.

Regarding proof of identity, the IJ noted that the passport, the only official identity document offered, raised more questions than it answered. The omission of the name Singh and the photo of Dhaliwal without a turban and with a trimmed beard were inconsistent with his claim to be a Sikh. Dhaliwal's explanation that these things were done to avoid persecution was particularly curious if he obtained the passport in 1993 because, according to his testimony, this was during a period of inactivity when he had no problems with the authorities and would not have any apparent reason to disavow or conceal his religious or political affiliations. Also, although Dhaliwal offered several letters written by various acquaintances to establish his identity, the IJ found that none of the letters adequately identified Dhaliwal as the person he claimed to be.

Beyond the problems with proof of identity, the IJ was troubled by a number of inconsistencies within and between Dhaliwal's application for asylum and his testimony. First, the IJ noted Dhaliwal's inconsistent statements regarding when he officially joined the Akali Dal Mann party. In the personal statement included in his asylum application, he claimed to have supported the party since 1982 and to have officially joined the party on April 13, 1992, explaining his decision to join was precipitated by the bad experience

4

he endured after his first arrest in 1991. In his testimony, however, he said several times that he did not join the group officially until 1995. When confronted with this inconsistency on cross-examination, he went back to his original claim that he had been a party member since 1992, claiming that he had made a mistake, twice, in his testimony. Second, the IJ found Dhaliwal's testimonial account regarding the period from 1991 to 1995, i.e., that he was politically inactive, was completely at odds with his asylum application, in which he claimed to have actively taken part in party meetings, rallies, demonstrations, and fund-raising. Third, the IJ noted that in his asylum application, Dhaliwal stated the killing of a party secretary occurred on March 14, 1997, but at the hearing, he testified that the killing occurred on April 4, 1997. Fourth, the IJ found Dhaliwal's account of his first arrest was illogical; it was not logical that the police would hold Dhaliwal, a non-member affiliate of the party, longer than they would hold more active members or a party leader. Last, the IJ found Dhaliwal's account of past persecution and fear of future persecution for being a Sikh were not consistent with the State Department's 1997 India Profile of Asylum Claims & Country Conditions ("Country Report" or "Report"). Specifically, the Country Report stated: there was no evidence that Sikhs faced harassment, mistreatment, or persecution for their religion or political opinions; Sikhs generally held high-ranking positions and were respected in Indian public life; and there was no significant pattern of discrimination against Sikhs.

The BIA summarily affirmed the IJ's decision pursuant to 8 C.F.R. § 1003.1(e)(4).

5

On appeal, Dhaliwal challenges generally the IJ's conclusion regarding his credibility. Specifically, he contends that the IJ erred in the determination that the documents offered to prove his identity were insufficient, the highlighting of minor inconsistencies in his testimony, and the conclusion that his testimony was illogical.

## II.

The Attorney General may grant asylum to any alien who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The burden to prove a well-founded fear of persecution lies with the applicant, who must establish a genuine fear of persecution and demonstrate that a reasonable person in the same circumstances would similarly fear persecution. The applicant's own testimony may be sufficient to establish eligibility for asylum, as long as the testimony is credible. See 8 C.F.R. § 208.13(a).

Where the BIA issues a summary affirmance, we essentially review the IJ's decision as if it were the decision of the BIA. See Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc). Our review is limited to ensuring that any findings are supported by substantial evidence. See id. We may reverse the BIA's decision only if "any reasonable adjudicator [would] be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Furthermore, "[w]e will not disturb the IJ's credibility determination and findings of fact

6

if they are 'supported by reasonable, substantial and probative evidence on the record considered as a whole.'" Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003) (quoting Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998)).

### III.

Dhaliwal's arguments on appeal can be generally categorized as follows: (1) the IJ erred in the determination that the documents offered to prove Dhaliwal's identity were insufficient, and (2) the IJ erred in focusing on minor inconsistencies in Dhaliwal's testimony and in the conclusion that his testimony was illogical.

First, regarding the IJ's determination that the documents offered to prove his identity were insufficient, Dhaliwal argues that his passport was authentic and valid and that the IJ did not adequately explain why the document itself was deficient to establish his identity. He further argues that the fact that he is pictured in the passport with a trimmed beard and without a turban and the fact that the passport does not use the name Singh do not prove that he is not a Sikh. He contends that none of these facts bear on the issue of identity or the probative value of the passport as an identity document. We disagree.

The essence of Dhaliwal's claim that he is eligible for asylum is that he has suffered and fears persecution for being a political Sikh. His identity is of fundamental importance to the determination of his status as a refugee and the passport, the only official document offered to prove his identity, is certainly relevant to this determination.

7

The record shows that the IJ gave due consideration to the passport, and indeed all the evidence offered by Dhaliwal, to prove he was in fact the person he claimed to be. Again, we note that the burden of proving eligibility as a refugee is on the applicant for asylum. See 8 C.F.R. § 208.13(a). Here, Dhaliwal simply failed to meet his burden of proof as to his identity, as a Sikh or otherwise.

Second, Dhaliwal argues that the IJ erred in according too much weight to trivial inconsistencies between his testimony and asylum application, namely to discrepancies relating to the date he joined the Akali Dal Mann party, the degree of his involvement with the party immediately after his first arrest in 1991, and the date of the killing of a party secretary in 1997. He contends these discrepancies can be explained as misstatements, mistakes in translation (Dhaliwal testified in Punjabi through an interpreter), minor in nature, or not discrepancies at all.

We disagree that the IJ attributed too much weight to these discrepancies. In Zubeda v. Ashcroft, 333 F.3d 463, 476–77 (3d Cir. 2003), we observed that an IJ should be cautious before placing too much weight on a discrepancy between an asylum application and subsequent testimony. Caution is required in light of the numerous factors that might make it difficult for an alien to articulate his/her circumstances, including language difficulties. Even considering any potential language difficulties here, however, as noted above, Dhaliwal's testimony regarding the period from 1991 until 1995 is completely at odds with his asylum application. Regardless of the date of his official

8

membership, one cannot reasonably reconcile his statement in the application, i.e., that he was actively taking part in party meetings, rallies, demonstrations, and fund-raising, with his testimony that during this period he was politically inactive. Dhaliwal's argument that these statements were consistent insofar as he stopped his activities for a period of time after June 1991, but decided <u>mentally</u> that he would struggle and support the party at some future time is untenable. This inconsistency is not minor in nature, nor can it be attributed to a mistake in translation. Indeed, during the direct examination, the IJ deliberately stopped the questioning to make it clear that Dhaliwal's testimony was that he was not active during this period. Due to the significance of this inconsistency and its direct impact on Dhaliwal's overall credibility, the IJ was justified in relying on it, at least in part, in making his adverse credibility determination and we do not believe a reasonable adjudicator would be compelled to find otherwise. Furthermore, Dhaliwal's contention that too much weight was given to a one-month discrepancy regarding the date of the killing of a party secretary is reasonable; however, we believe the IJ's decision mentions this inconsistency not as a dispositive detail, but rather as illustrative of one of a number of inconsistencies between the asylum application and the testimony.[1]

---

[1]Dhaliwal further argues that the IJ erred in interpreting the State Department's Country Report and in concluding his testimony was illogical. Regarding these arguments, we need only say that a reasonable adjudicator would not be compelled to reach conclusions contrary to those found by the IJ.

Based on the record, the IJ's interpretation of the Country Report was justified. The IJ took at face value the Report's statement that "[t]here is no evidence that Sikhs or Sikh particularists face harassment, mistreatment or persecution merely on the basis of

Given Dhaliwal's failure to adequately prove his identity or to explain inconsistencies in his testimony and asylum application, we conclude that the IJ's findings were based on substantial evidence.[2]

IV.

For the reasons stated above, we will DENY the petition for review of the IJ's decision.

---

their religion or political opinions." Dhaliwal seems to argue that this statement may be interpreted to mean Sikhs may be persecuted not for religion or political opinions, but for their political <u>activity</u>–i.e., that Dhaliwal was not persecuted for his subscription to Sikh ideals, but for his participation in party activities. Although this statement admits of other interpretations, we cannot say that a reasonable adjudicator would be compelled to interpret the statement differently from the IJ. The same is true regarding Dhaliwal's testimony about his first arrest. To say his version of events was "illogical" was simply to say that the testimony was objectively implausible. Again, we cannot say, based on the record, that a reasonable adjudicator would be compelled to find to the contrary.

[2]Because Dhaliwal did not specifically appeal the denial of his withholding of removal claim or the denial of his claim for protection under the Convention Against Torture, we do not pass upon either claim here. It should be noted, however, that the denial of the withholding of removal claim would be evaluated under a more stringent standard than the "substantial evidence" standard applied above, and such an appeal would have been rejected had it been made. See <u>Zubeda v. Ashcroft</u>, 333 F.3d 463, 469 (3d Cir. 2003) (noting that the standard is a "clear probability" that the applicant will be persecuted if returned to his native country).